**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In the Matter of: | Case No. **08-00555-lmj7** |
| **Ivan Brooks Thrapp**, <br> **Margie Diane Thrapp**, | |
| Debtors | |
| **United States Trustee**, | Adv. Pro. No. **09-30018-lmj** |
| Plaintiff | [UNPUBLISHED] |
| v. | |
| **Ivan Brooks Thrapp**, <br> **Margie Diane Thrapp**, | |
| Defendants | |

**MEMORANDUM OF DECISION**
**(date entered on docket: April 2, 2012)**

Relying on 11 U.S.C. section 727(d)(1), the United States Trustee for Region 12 ("U.S. Trustee") commenced this adversary proceeding seeking a revocation of the discharge that Debtors Ivan Brooks Thrapp and Margie Diane Thrapp (collectively "Debtors" or "Thrapps," and individually "Mr. Thrapp" and "Mrs. Thrapp") received in their Chapter 7 case. He contends that this Court would have denied the Debtors a discharge pursuant to 11 U.S.C section 727(a)(2) had the United States Trustee learned about the fraud in time to bring an adversary proceeding objecting to the entry of the discharge. Debtors deny that they committed any fraud in obtaining their discharge. Having reviewed the trial transcript, the exhibits and the arguments of counsel, the Court enters its decision revoking the Debtors' discharge.[1]

---

[1] The U.S. Trustee also relied on 11 U.S.C. section 727(d)(2); however, at best, the record would support the U.S. Trustee's allegations about certain accounts only as to Mrs. Thrapp.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1334 and the standing order of reference entered by the United States District Court for the Southern District of Iowa. This is a core matter under 28 U.S.C. section 157(b)(2)(J).

BACKGROUND

When the Thrapps commenced their Chapter 7 case on February 22, 2008, they reported in paragraph ten of their statement of financial affairs that they had sold a pontoon boat and 5th wheel camper to a Jamie McCarthy for $5,200.00 in the spring of 2007. They received a general discharge of their debts on May 28, 2008, and the case closed on June 8, 2008 without any distribution to creditors. The Court granted the U.S. Trustee's motion to reopen the case on February 2, 2009, and the U.S. Trustee filed the instant proceeding the following day. On February 4, 2010 Donald F. Neiman, the Chapter 7 Trustee, filed a Notice and Report of Abandonment regarding the assets in issue indicating "these undisclosed assets are not titled in the debtors' names; the time and expense to liquidate the assets through an auction sale and transfer the titles, if the assets could be sold, would outweigh the monetary sale proceeds to be obtained." (Case No. 08-00555-lmj7, Docket No. 28.) On February 23, 2010, the Clerk of Court entered a docket text order granting the uncontested notice and report.

On direct examination by the U.S. Trustee during the May 5, 2010 trial, Ms. McCarthy testified that she is the girlfriend of Chris Holsinger, who is Mrs. Thrapp's son. She and Mr. Holsinger have two children. She acknowledged that each of the Thrapps had approached her about putting a pontoon boat and travel trailer in her name. She stated she did not pay them anything for the items. She did pay for the insurance on the pontoon boat when she first received that item. Ms. McCarthy maintained the

reason for the transfer was Mrs. Thrapp's desire to leave Mr. Holsinger and her other children something of the inheritance she had received from her father, but Ms. McCarthy acknowledged that the Thrapps were having financial difficulties at the time of the transfer. When specifically asked whether she told an investigator during a state food assistance proceeding that the Thrapps put the items in her name to avoid losing them in bankruptcy, she stated "I gave the same reason, so they would – the children would have something and they would not necessarily lose it in bankruptcy." (Tr. 32, ll. 21-23.)

On cross-examination, Ms. McCarthy testified that Mr. and Mrs. Thrapp were still working when they transferred the items to her. Seemingly contrary to her testimony on direct examination, she agreed with the Thrapps' attorney that neither Mr. Thrapp nor Mrs. Thrapp suggested they were transferring the items to avoid losing them in bankruptcy.

According to U.S. Trustee Exhibit A (a certified copy of a title snapshot from the Office of the Treasurer of Polk County, Des Moines, Iowa), Ms. McCarthy subsequently transferred a 1997 Layton Lite Travel Trailer to a Kay Lynn Joines on March 14, 2008. According to U.S. Trustee Exhibit B (a certified copy of a registration receipt from the Office of the Treasurer of Polk County, Des Moines, Iowa), the Treasurer also registered a 1993 Hooper trailer in Ms. Joines' name on March 14, 2008.

On direct examination by the U.S. Trustee, Ms. Joines testified that she had worked with Mrs. Thrapp for thirteen years at Affinity Credit Union and that it is was Mrs. Thrapp who asked her to put the trailer, camper and pontoon boat in her name because Mrs. Thrapp did not want to lose those items that represented her father's inheritance.

Though Ms. Joines paid for the registration, she stated that she did not pay for the insurance, did not use the items and stored them at the Thrapps' residence. On cross-examination, Ms. Joines agreed with the Thrapps' attorney that she owned the items, could use them at any time and stored them at the Thrapps' residence because she did not have room to store them where she lived. Likewise, she responded affirmatively when asked to confirm that she was helping out Ms. McCarthy, whom she also had known for a number of years, by allowing the items to be transferred into her name; however, she could not attest that the reason was because Ms. McCarthy was trying to qualify for state assistance. As for Mrs. Thrapp's request, Ms. Joines clarified that Mrs. Thrapp did not want Ms. McCarthy to lose the items intended as an inheritance for Mr. Holsinger and her other children.

On direct examination by the U.S. Trustee, Ms. McCarthy testified that she transferred the items to Ms. Joines because having the items in her own name was hindering her efforts to obtain food assistance. She verified that Ms. Joines paid nothing for the transfer and suggested the transfer kept the items "still within friends or families." (Tr. 33, ll. 4-5.) On cross-examination, Ms. McCarthy agreed with the Thrapps' attorney that the items were no longer available for use by the Thrapps, but Mrs. Thrapp's children, grandchildren and she could still use the items—through some understanding she had with Ms. Joines. Ms. McCarthy also stated that the items had not been stored where Ms. Joines lived because there was no room to park them. In any event, she did not recall that she, Mr. Holsinger or their children had ever used the items and was not aware of the Thrapps having used them.

Upon questioning by the U.S. Trustee in the U.S. Trustee's case-in-chief, Mrs. Thrapp testified there was no debt owed against the pontoon boat or the camper and that she believed the Internal Revenue Service could have seized those items to pay off a substantial federal tax debt that she and Mr. Thrapp owed the government. She confirmed that Ms. McCarthy paid nothing for the items. As for the contrary statement in paragraph ten of the statement of financial affairs, Mrs. Thrapp maintained the items were worth $5,200.00 but acknowledged the representation that the items were actually sold was incorrect. Though she remembered attending the 11 U.S.C. section 341 meeting of creditors and being asked by the Chapter 7 trustee whether her statements were true and correct, Mrs. Thrapp could not recall if the trustee had specifically asked her whether she thought $5,200.00 was a fair price for the items.

Upon direct examination in Debtors' case-in-chief, Mrs. Thrapp testified that she and Mr. Thrapp purchased a pontoon boat in 1993 for between $7,000.00 and $8,000.00. In 1997 she utilized approximately $13,000.00 of a $20,000.00 inheritance she had received from her father to purchase a fifth-wheel camper. At some point in 2007, they decided to transfer those items that had been titled in their names to Ms. McCarthy. Mrs. Thrapp responded in the negative when asked whether she had any concerns at that time about the personal property being sold to pay a tax debt; however, she could not recall when the Internal Revenue Service garnished one of their bank accounts. She likewise responded in the negative when asked whether bankruptcy was on her mind at the time of the transfer. Mrs. Thrapp agreed with her counsel that the transfer was made to Ms. McCarthy because she appeared to be in charge of the Holsinger-McCarthy household finances.

Mrs. Thrapp further testified that she and Mr. Thrapp began considering filing for bankruptcy relief in October of 2007 due to the significant reduction in income they had suffered as a result of Mr. Thrapp losing his contract work with Jerry's Homes. In the ensuing months before filing, they attempted other avenues to pay down some of their debts but eventually sought the assistance of a bankruptcy practitioner. Mrs. Thrapp recalled going to her attorney's office to sign the various documents necessary to commence the Chapter 7 case. She acknowledged that she was given an opportunity to review the items line by line but did not do so. With respect to paragraph ten of the statement of financial affairs, she agreed the use of the word "sold" was not accurate. As for the 11 U.S.C. section 341 meeting of creditors, Mrs. Thrapp responded in the negative when asked if she had any recollection of the meeting and then in the affirmative when asked if that was the reason she did not have any recall of a specific question. She answered in the negative when asked if anyone asked her for any documentation or other information about the transaction at any time before the meeting, but she repeatedly said only that she could not recall if anyone requested additional information after the meeting.

On cross-examination, Mrs. Thrapp agreed with the U.S. Trustee that most of the responses to the questions on the statement of financial affairs were marked "none." Then when asked if her prior testimony about not reviewing every line meant simply that she did not review what was marked "none," she responded she did not remember much about reviewing the document. She responded affirmatively both when asked to confirm that it was her position she had not been thinking about seeking bankruptcy

relief when the transfer in issue occurred and when asked to confirm that the transfer occurred after Mr. Thrapp lost his work with Jerry's homes.

Upon direct examination in Debtors' case-in-chief, Mr. Thrapp testified that he had been doing business as a subcontractor, Thrapp Construction Company, cleaning job sites for Jerry's Homes for over a decade at the time that contractor ceased operations in the spring of 2007.  In addition to suffering a significant reduction in income as a result of not being able to find similar work, Mr. Thrapp reported he was left with business debts related to pickup trucks, dump fees and charge cards.  Though he was able to dispose of the trucks and pay off the credit union, he was not successful in paying off the cards in full or arranging for refinancing.  He testified that the scheduled tax debt was related to personal income in 2005 and 2006, that he had no expectation of discharging that debt by seeking bankruptcy relief and that he was working with the taxing authorities to resolve that debt.  He acknowledged that the Internal Revenue Service sent him a letter about garnishing his accounts around the time of the transfer in issue, but he stated he did not understand that to mean the government might seize the pontoon boat or camper.

With respect to the pontoon boat and camper, Mr. Thrapp testified that the Debtors obtained financing to purchase the pontoon boat and used Mrs. Thrapp's inheritance as a down payment on the camper.  They paid off the debts on both assets. He thought the transfer to Ms. McCarthy occurred in April 2007 and was done in order for Mrs. Thrapp's children to have something from the inheritance she had received from her father.  When asked whether he ever had "any communications directly with Jamie McCarthy about why the boat and the camper were being transferred," Mr.

Thrapp responded that "[w]e just wanted to give them—give them something." (Tr. 118, ll. 10-14.)  He responded in the negative when asked if the thought of bankruptcy had crossed his mind at the time of the transfer.

Like Mrs. Thrapp, Mr. Thrapp recalled going to their attorney's office to sign various documents necessary to commence the Chapter 7 case.  He acknowledged that he was given an opportunity to review the items line by line but did not do so.  He answered in the negative when asked whether he realized at the time of signing that the transaction in issue was referred to as a sale.  He answered in the negative when asked if anyone at any point in time asked him for any documentation evidencing such a sale.

In response to the U.S. Trustee seeking verification that Mr. Thrapp's direct testimony was that he had not discussed the transfer with Ms. McCarthy, Mr. Thrapp stated "I didn't talk to her directly.  I mean, I wasn't there when my wife talked to her about it." (Tr. 127, 11. 17-18.)  Then when the U.S. Trustee asked him whether Ms. McCarthy's administrative hearing testimony was fabricated regarding Mr. Thrapp approaching her in tears about transferring the items so they would not be taken away, Mr. Thrapp's response was limited to "I—I don't ever have tears." (Tr. 127, 1. 23.)

Mr. Thrapp's cross-examination concluded as follows:

Q.  You said it came to your attention later that you had misstated the nature of the transfer to Ms. McCarthy.  When did that come to your attention?

A.  At the hearing.

Q.  Which hearing?

A.  With that Mr. Neiman, if this—that the bankruptcy hearing.

Q. So at the first meeting of creditors you told Mr. Neiman that there had been no money paid for that?

A. No. He just asked questions.

Q. And he asked you specifically if the value of the assets you sold were about $5,200?

A. Yes, I did answer that.

. . .

Q. So how was it brought to your attention at that time that that information was wrong?

A. I understood what he said that I—I knew that was wrong at that time.

Q. And yet you didn't file any amendments or make any changes to your bankruptcy documents?

A. I just wanted to try to find a job. I didn't have no groceries. I didn't know what to do. I wanted to get—I wanted to leave. You know, it's embarrassing to me.

(Tr. 133, l. 15 to 134, l. 4, and Tr. 134, l. 20 to 135, l. 4.)

## APPLICABLE LAW

11 U.S.C. section 727(d)(1) provides:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge.

11 U.S.C. § 727(d)(1).

The party requesting a revocation of the discharge bears the burden of proving each applicable element of section 727(d) by a preponderance of the evidence. See O'Neal v DePriest (In re DePriest), 414 B.R. 518, 521 (Bankr. W.D. Mo. 2009). The first element of section 727(d)(1) is met if a debtor committed a fraud that would have resulted in the discharge being denied had the fraud been known at the time the discharge was granted. Id. The second element is met if the party requesting the discharge did not know about the fraud until after the discharge was granted. Id.

11 U.S.C. section 727(a)(2) provides:

(a) The court shall grant the debtor a discharge, unless –
. . . .

    (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –

        (A) property of the debtor, within one year before the date of the filing of the petition; or

        (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2).

A plaintiff objecting to the entry of a discharge bears the burden of proving each applicable element of section 727(a) by a preponderance of the evidence. See In re Sendecky, 283 B.R. 760, 763 (8th Cir. BAP 2002). With respect to section 727(a)(2)(A), a plaintiff must establish that the act in issue was done within twelve months of the petition date, that the act was done with intent to hinder delay or defraud creditors, that the act was committed by the debtor, and that the act consisted of the transfer, removal,

destruction or concealment of any of the debtor's property. See <u>City Nat'l Bank of Ft. Smith v Bateman (In re Bateman)</u>, 646 F.2d 1220, 1222 (8th Cir. 1981).

## DISCUSSION

The parties do not dispute the second element of section 727(d)(1).[2] The U.S. Trustee has proven by a preponderance of the evidence the first element of section 727(d)(1) and the elements of section 727(a)(2)—specifically subparagraph (A). That is, whether one relies on the reference to spring of 2007 in paragraph 10 of the statement of financial affairs or Mr. Thrapp's testimony that the transfer occurred in April 2007, the record supports finding that the Thrapps transferred the property in issue, that was titled in their names at the time, to Ms. McCarthy within a year of the February 22, 2008 petition date. The record is replete with badges of fraud evidencing that the Thrapps had the intent to hinder, delay or defraud their creditors at the time of the transfer.

Specifically, the Thrapps knew their financial situation had deteriorated significantly and that they were facing potential collection activity by the Internal Revenue Service. They conveyed the property to Ms. McCarthy, who was both the girlfriend of Mrs. Thrapp's son and the mother of two of Mrs. Thrapp's grandchildren. The Thrapps received no consideration for the transfer. Though the transfer was a purported effort to pass on an inheritance to Mrs. Thrapp's children, only the camper had been partially obtained with some of the inheritance Mrs. Thrapp had received from

---

[2] In paragraph 15 of the complaint, the U.S. Trustee alleged that the Iowa Department of Inspections and Appeals contacted his office about the fraud on June 2, 2008. (Docket No. 1). Other than a general denial for a lack of information or belief in paragraph 15 of their answer (Docket No. 5), the Thrapps have not contended at any point in this proceeding that the U.S. Trustee knew about the alleged fraud prior to the entry of the discharge on May 28, 2008.

her father. The so called inheritance for Mrs. Thrapp's children soon thereafter passed to a third party. Meanwhile, the property remained at the Thrapps' residence.

In the face of the overwhelming record against them, as relayed in the discussion portion of this memorandum of decision, the Debtors suggest that this Court should take into consideration the fact that they could have exempted most of the value in the items in issue. Such an argument misses the point of section 727(a)(2)(A) and is not persuasive. That is, the Debtors' misrepresentations resulted in the Chapter 7 Trustee not investigating the transfer and the value of the items in a timely fashion.[3] The transfer of title was a complication the Debtors created, and that complication contributed to the Chapter 7 Trustee filing the Notice and Report of Abandonment.

## CONCLUSION

WHEREFORE, for the reasons set forth in this Memorandum of Decision, the Court finds that: The U.S. Trustee has sustained his burden of proving that the Debtors' discharge should be revoked.

A separate Order shall be entered accordingly.

/s/ Lee M. Jackwig
Lee M. Jackwig
U.S. Bankruptcy Judge

Parties receiving this Order from the Clerk of Court:
Electronic Filers in this Adversary Proceeding

---

[3] Though the U.S. Trustee made only a passing reference to 11 U.S.C. section 727(a)(4)(A) (false oath or account) on pages 5 and 7 of his trial brief (Docket No. 13) and did not specifically reference said section at trial, the record would have supported a section 727(d)(1) revocation of the discharge based on section 727(a)(4)(A).